**Nos. 24-11076, 24-11300, 24-11366, 24-11367, 24-11428, 24-11444, 24-11445 & 24-12003**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

---

FLORIDA EAST COAST RAILWAY LLC, *et al.*,

Petitioners,

v.

FEDERAL RAILROAD ADMINISTRATION, *et al.*,

Respondents.

---

On Petition for Review of a Final Rule of the Federal Railroad Administration

---

# SUPPLEMENTAL BRIEF FOR RESPONDENTS

---


BRETT A. SHUMATE
*Assistant Attorney General*

CHARLES W. SCARBOROUGH
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*
CHARLES E. ENLOE
*Assistant General Counsel for Litigation and Enforcement*
PAULA LEE
*Senior Trial Attorney*
*U.S. Department of Transportation*
CHRISTOPHER S. VAN NOSTRAND
*Acting Chief Counsel*
REBECCA S. BEHAVESH
*Senior Attorney*
SAMUEL GILBERT
*Senior Attorney*
*Federal Railroad Administration*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for respondents certify that they are aware of the following additional persons that have an interest in the outcome of this appeal, in addition to those listed on petitioners' and amici's Certificates of Interested Persons and Corporate Disclosure Statements.

Enloe, Charles E.

Myron, Laura E.

Scarborough, Charles W.

Shumate, Brett A.

Zerzan, Gregory

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

INTRODUCTION .......... 1

ARGUMENT .......... 1

THE CHANGE IN POSITION DOCTRINE DOES NOT PROVIDE A BASIS TO INVALIDATE THE CREW-SIZE RULE. .......... 1

CONCLUSION .......... 6

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ........................................................................ 1, 3, 6

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........................................................................ 2, 3

*Food & Drug Admin. v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025) ........................................................................ 1, 2

*National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) ........................................................................ 1, 6

**Other:**

89 Fed. Reg. 25,052 (Apr. 9, 2024) ........................................... 2-3, 3, 4, 5, 6

## INTRODUCTION

In response to this Court's Order of July 13, 2026, respondents respectfully submit this supplemental brief to address "whether the change-in-position doctrine applies when the agency action constituting the initial position has been vacated." Order, July 13, 2026. As set forth below, in light of the Ninth Circuit's prior vacatur of the 2019 withdrawal, this Court should hold that the change-in-position doctrine does not provide a basis for striking down the rule, particularly where the Federal Railroad Administration (FRA) offered more than sufficient explanation for the change.

## ARGUMENT

### THE CHANGE IN POSITION DOCTRINE DOES NOT PROVIDE A BASIS TO INVALIDATE THE CREW-SIZE RULE.

It is a longstanding principle of administrative law that "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)). As the Supreme Court has explained, the "change-in-position doctrine asks two questions. The first is whether an agency changed existing policy," *Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 569 (2025), and the second is "[d]id

the agency 'display awareness that it *is* changing position' and offer 'good reasons for the new policy'?" *id.* at 570 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (emphasis in original)). An agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Fox Television Stations*, 556 U.S. at 515; *see also Wages & White Lion Invs.*, 604 U.S. at 570.

Here, as explained in the government's brief (at 55-62), the change-in-position doctrine does not provide any basis to conclude that FRA acted arbitrarily or capriciously in promulgating the crew-size rule. The Supreme Court explained in *Wages & White Lion Investments* that it has "traditionally applied the change-in-position doctrine when an agency shifts from a position expressed in a more formal setting." 604 U.S. at 569 n.5.[1] As FRA recognized, the prior formal articulation of the agency's policy had been vacated. *See Train Crew Size Safety Requirements*, 89 Fed. Reg.

[1] The Court left open the question whether the "change-in-position doctrine" applies "to an agency's divergence from a position articulated in nonbinding guidance documents." *Wages & White Lion Invs.*, 604 U.S. at 569 n.5.

25,052, 25,083 (Apr. 9, 2024) ("[T]he decision of the U.S. Court of Appeals for the Ninth Circuit to vacate and remand the 2019 withdrawal left FRA with various options on how, or whether, to address the matter of crew size safety."). Thus, this Court should not consider it a prior formal articulation of the agency's position within the meaning of the doctrine.

The agency, however, acknowledged the position it took in the 2022 rule and fully explained its reasons for changing course from its previous position in the 2019 withdrawal. *See* 89 Fed. Reg. at 25,083. One of the primary purposes of the change-in-position doctrine is to ensure that agencies are "cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino Motorcars*, 579 U.S. at 221-22 (quoting *Fox Television Stations*, 556 U.S. at 515). A rule may be arbitrary or capricious if the agency does not address "facts and circumstances that underlay or were engendered by the prior policy." *Id.* at 222 (quoting *Fox Television Stations*, 556 U.S. at 515). Given that the prior articulations of the agency's policies here came in the form of a 2016 Notice of Proposed Rulemaking that was never finalized and a 2019 withdrawal of that notice that was subsequently vacated by the Ninth Circuit, it is not at all clear that there could be any reliance interests from regulated entities tied to any prior articulation of FRA's views.

Nonetheless, FRA gave "two independent reasons" for "reassess[ing] its prior positions." 89 Fed. Reg. at 25,083. First, the agency noted that the 2019 Order "de-emphasized safety concerns raised by FRA-sponsored research on the cognitive and collaborate demands of crewmembers and by commenters on the 2016 NPRM." *Id.* FRA further explained that it had "reconsidered several of the safety issues discussed in the 2019 withdrawal," including "the research rais[ing] safety concerns regarding one-person train crews, such as the loss of a second crewmember to notice and correct errors." *Id.* Where, as here, the agency has pointed to the reasons underlying a prior vacatur by a federal court of appeals as one of the bases for changing course, there is no sound basis for holding the agency's new policy was arbitrary or capricious for failing to address a prior change in position.

Moreover, FRA identified a second independent reason for its new position: "in reassessing regulation of safety issues regarding train crew size, FRA also considered information not analyzed in the 2019 withdrawal, such as technological trends and operational changes on Class I freight railroads since 2019." 89 Fed. Reg. at 25,083. Finally, the agency made clear in the final rule that, to account for various industry reliance interests, it was not "broadly mandating two crew members," but instead "requir[ing]

two crew members for the most complex operations until a railroad analyzes an operation and persuasively demonstrates that risks associated with eliminating the second crew member are reasonably mitigated." *Id.* at 25,084; *see also id.* ("[T]his final rule accommodates the development of new technology while also ensuring the safety of crews and the public. . . FRA's incremental approach—that preserves the status quo while providing latitude for railroads to explore benefits from advances in technology—promotes FRA's statutory mandate to issue regulations 'as necessary' for 'railroad safety.'").

In sum, even assuming the change-in-position doctrine applies here, the agency has satisfied the requirements articulated by the Supreme Court in *Wages & White Lion Investments*. FRA explained that it "reconsidered information previously analyzed by FRA on crew size safety [following the prior vacatur] and considered additional relevant information, including safety data indicating potentially worsening trends since the 2019 withdrawal was issued." 89 Fed. Reg. at 25,083. "Based on this assessment, FRA determined that it needed to change its position from the 2019 withdrawal and concluded that the regulatory requirements in this final rule are necessary to ensure that trains are adequately staffed for their intended operation and railroads have appropriate safeguards in place for

safe train operations whenever using a one-person train crew." *Id.* at 25,083-84. Because the agency provided a reasoned explanation for the adoption of the 2022 crew-size rule, there is no "'[u]nexplained inconsistency' in agency policy" that would provide "'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Encino Motorcars*, 579 U.S. at 222 (alteration in original) (quoting *Brand X*, 545 U.S. at 981).

## CONCLUSION

For the foregoing reasons, the change-in-position doctrine provides no sound basis to strike down the crew-size rule.

Respectfully submitted,


GREGORY ZERZAN
*General Counsel*
CHARLES E. ENLOE
*Assistant General Counsel for Litigation and Enforcement*
PAULA LEE
*Senior Trial Attorney*
*U.S. Department of Transportation*
CHRISTOPHER S. VAN NOSTRAND
*Acting Chief Counsel*
REBECCA S. BEHAVESH
*Senior Attorney*
SAMUEL GILBERT
*Senior Attorney*
*Federal Railroad Administration*

BRETT A. SHUMATE
*Assistant Attorney General*
CHARLES W. SCARBOROUGH
*s/ Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*
*Laura.e.myron@usdoj.gov*


July 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 1,154 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Laura E. Myron*
LAURA E. MYRON

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Laura E. Myron*
LAURA E. MYRON